**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

OFFICE OF THE ATTORNEY GENERAL,
THE STATE OF FLORIDA,
Department of Legal Affairs;
THE STATE OF CONNECTICUT,
Office of the Attorney General,

      Plaintiffs,

v.

BERGER LAW GROUP, P.A.
a Florida professional association;
IAN BERGER, an individual;
LITIGATION LAW, LLC, a Florida limited
liability company; GARY DIGIROLAMO,
an individual; THE RESOLUTION LAW
GROUP, P.C., a Connecticut professional corporation;
R. GEOFFREY BRODERICK, an individual;
THE RESOLUTION LAW CENTER, LLC,
a Florida limited liability company;
DAVID FRIEDMAN, an individual;

      Defendants.

_____/

CASE No. _____

8:14-CV-1825-T-30MAP

**COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER RELIEF**

**(FILED UNDER TEMPORARY SEAL)[1]**

      Plaintiffs, the Office of the Attorney General, State of Florida, Department of Legal

Affairs ("The Florida Attorney General") and the State of Connecticut, by and through their

undersigned attorneys, respectfully allege as follows:

_____
[1] Motion to Seal filed concurrently.

1

## SUMMARY OF COMPLAINT

1.       In the midst of America's foreclosure crisis, an illicit industry of mortgage modification scams began preying on desperate consumer homeowners facing foreclosure and the loss of their homes.  Using deceptive advertising and telemarketing to recruit homeowners, scammers have made money by charging distressed homeowners upfront fees on the promise that they could obtain mortgage modifications for those homeowners, often providing little or no actual assistance to the homeowners.

2.       To combat these practices, many states, including Florida and Connecticut, enacted laws to prohibit these schemes, and state regulators have enforced their unfair and deceptive trade practices laws, debt negotiation licensure requirements, and unauthorized practice of law prohibitions.  In addition, federal regulators made it illegal in every state for mortgage assistance relief providers to charge homeowners a fee for mortgage modification services before actually obtaining mortgage modifications for those homeowners.

3.       In a twist on the typical loan modification rescue scam designed to avoid regulatory scrutiny by creating the appearance of legitimacy, some veterans of such scams have shifted to selling homeowners' participation in so-called "mass-joinder" lawsuits.  Homeowners are led to believe that they will be represented by real law firms and that joining a mass-joinder lawsuit will help them avoid foreclosure, reduce their interest rates and loan balances, and entitle them to monetary compensation.

4.       Since at least late 2011, an enterprise operating under the name of the Resolution Law Group, and later also under the name of the Berger Law Group, (collectively "the RLG/BLG Enterprise") has generated millions of dollars in illegal upfront fees by convincing

2

consumers to pay for the opportunity to be included as a plaintiff in these so-called "mass-joinder" lawsuits against their mortgage lenders.

5.      Organized and largely controlled by a veteran of a similar mortgage relief scam, the RLG/BLG Enterprise falsely promises that the lawsuits will induce banks to give the consumers mortgage modifications or other forms of foreclosure relief.  The Enterprise uses these promises to convince consumers to pay fees before the RLG/BLG Enterprise obtains, or even tries to obtain, mortgage modifications for the consumers it signs up.

6.      In an attempt to circumvent state and federal consumer financial law and take advantage of regulatory exemptions for the practice of law, the RLG/BLG Enterprise holds itself out as a law firm and promises legal representation.  However, it is not fundamentally different from any other loan modification scam, and its conduct is prohibited by both federal and state law.

7.      The RLG/BLG Enterprise often initiates the scheme by sending misleading mailers that resemble class action notices to consumers notifying them that they are a potential plaintiff in a "national" lawsuit against their particular mortgage lender or servicer for "multiple claims of fraud and misrepresentation."  The mailers create a sense of urgency for consumers to enroll by a certain date or risk exclusion and induce consumers into believing that by "opting-in" they will receive a reduced interest rate, lower monthly payment, principal reduction, loan forgiveness, and monetary damages.

8.      Consumers who respond to the mailers reach the RLG/BLG Enterprise's telemarketing boiler room and are subjected to further high pressure sales tactics by commission-based, non-attorney sales agents.

9.      The mailers and sales agents fail to mention either the RLG/BLG Enterprise's large upfront fee required to enroll or the monthly "maintenance fees" charged by the RLG/BLG Enterprise.  Although the RLG/BLG Enterprise charges consumers varying amounts, typically there is an initial upfront payment of typically $6,000, often described as an "investigation fee," followed by a $500 monthly "maintenance fee."

10.     The RLG/BLG Enterprise later induces consumers to continue making monthly payments by providing them with misleading information regarding the status and progress of the lawsuits and by making further misrepresentations regarding the benefits of participating in the lawsuits.

11.     In reality, the RLG/BLG Enterprise provides little or no meaningful assistance to struggling homeowners.  Rather, the RLG/BLG Enterprise's misrepresentations induce consumers into believing that participation in a mass-joinder lawsuit will result in mortgage modifications or other forms of foreclosure relief.

12.     To date, the RLG/BLG Enterprise has misled thousands of homeowners nationwide, and, as a result, has pocketed at least $4.7 million for itself.  The RLG/BLG Enterprise continues to solicit new consumers and take payments from those who have already enrolled.

13.     Plaintiffs bring this action to halt the RLG/BLG Enterprise's scam, to hold the entities and individuals who run and profit from the Enterprise accountable, and to provide redress for the injuries to consumers that the Enterprise has caused.

14.     By filing this lawsuit, Plaintiffs do not seek to opine on the validity of any legal theories used to challenge the alleged conduct of mortgage lenders or servicers.  However, the

4

RLG/BLG Enterprise should not be allowed to violate state and federal law in the process of recruiting consumers to join their mass-joinder lawsuits.

15.    Plaintiffs have authority to enforce their respective state consumer protection laws which govern unfair or deceptive acts and practices. *See* Chapter 501 Part II, Florida Statutes; Connecticut General Statutes, Chapter 735a. Plaintiffs also have authority to enforce the federal prohibition on upfront fees, as well as other related federal prohibitions and disclosure requirements applicable to mortgage assistance relief providers, under the Mortgage Assistance Relief Services Rule, generally referred to herein as "Regulation O." 12 C.F.R. § 1015 (2012). Regulation O requires providers of mortgage assistance relief services to make certain disclosures, such as that the business is not affiliated with the government and that the consumer may reject any proposed modification. It also prohibits these providers from making certain representations, such as that a consumer is not obligated to continue making his mortgage payments. In addition, Regulation O generally prohibits mortgage assistance relief service providers from collecting an advance fee for such services. *See* 12 C.F.R. § 1015.5 (2012).

16.    In this action, Plaintiffs seek an order permanently enjoining Defendants from engaging in their illicit business practices, granting restitution for affected consumers, imposing civil penalties, and granting all other relief available pursuant to their respective consumer protection laws and under Regulation O. This will make Defendants' victims whole again and will prevent the RLG/BLG Enterprise from causing the same harm to other homeowners.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action because it is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a), presents a federal question, 28

U.S.C. § 1331, and is brought by Plaintiff State Attorneys General pursuant to their authority under 12 U.S.C. §§ 5538(b)(1) & 5552, and 12 C.F.R. § 1015.10 (2012).

18.     In addition, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the subject matter of the state law claims asserted by Plaintiffs because those claims are so related to the claims brought under federal consumer financial law that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the claims brought by Plaintiffs pursuant to 12 U.S.C. §§ 5538(b)(1) & 5552.

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 5538(b)(5)(A) because a substantial part of the events or omissions and course of conduct giving rise to the claims set forth in this Complaint occurred in this district.

## PLAINTIFFS

20.     The State of Florida and the State of Connecticut are authorized to bring this action and to seek injunctive and other statutory relief to enforce Regulation O under 12 U.S.C. § 5538(b)(1) and 12 C.F.R. § 1015.10 (2012).

21.     The Florida Attorney General is an enforcing authority of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes, and Section 812.014, Florida Statutes. The Office of the Florida Attorney General Pamela Jo Bondi has conducted an investigation of the matters alleged herein, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that this enforcement action serves the public interest.

22.     As an enforcing authority under FDUTPA, the Office of the Attorney General is authorized to pursue this action to enjoin FDUTPA violations and to obtain legal, equitable, or other appropriate relief, including restitution, the refund of monies paid, disgorgement of ill-

gotten monies, civil penalties, and other relief as may be appropriate pursuant to Sections 501.207, 501.2075, and 501.2077, Florida Statutes.  The Florida Attorney General may also seek similar relief for theft pursuant to Section 812.035, Florida Statutes.

23.    Connecticut Attorney General George Jepsen, on behalf of the State of Connecticut, brings this action (a) at the request of William M. Rubenstein, Commissioner of the Department of Consumer Protection of the State of Connecticut, under the Connecticut Unfair Trade Practices Act ("CUTPA"), Chapter 735a of the Connecticut General Statutes, and more particularly, Conn. Gen. Stat. § 42-110m to obtain injunctive relief against Defendants' violations of Conn. Gen. Stat. § 42-110b, to obtain other relief as is necessary to redress injury to consumers resulting from Defendants' violations of law, and civil penalties, pursuant to Conn. Gen. Stat. § 42-110o, and (b) under Regulation O, 12 C.F.R. § 1015.10 (2012) pursuant to the authority conferred by Connecticut General Statutes § 3-129e.

## DEFENDANTS

24.    Defendant Gary L. DiGirolamo is an individual who, directly and through the RLG/BLG Enterprise, offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

25.    DiGirolamo, a non-attorney and resident of Mission Viejo, California, is the RLG/BLG Enterprise's most senior manager.  He materially participates in the conduct of the Enterprise's affairs.

26.    At all times material to this complaint, DiGirolamo transacts or has transacted business in the Middle District of Florida.

27.    Defendant David Friedman is an individual who, directly and through the RLG/BLG Enterprise, offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

28.    Friedman, a non-attorney and resident of Tampa, Florida, within this District, manages and controls the RLG/BLG Enterprise's sales operations and is the President of Defendant Resolution Law Center.  He has managerial responsibility for the Enterprise and materially participates in the conduct of its affairs.

29.    At all times material to this complaint, Friedman transacts or has transacted business in the Middle District of Florida.

30.    Defendant Robert Geoffrey Broderick, a resident of San Clemente, California is an individual who, directly and through the RLG/BLG Enterprise, offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

31.    Broderick is an attorney licensed to practice in Connecticut, New Jersey and the District of Columbia and is the President of Defendant The Resolution Law Group, P.C.  He is the Enterprise's front man, has managerial responsibility for The Resolution Law Group, and materially participates in the conduct of its affairs.

32.    At all times material to this complaint, Broderick transacts or has transacted business in the Middle District of Florida.

33.    Defendant Ian Berger is an individual who, directly and through the RLG/BLG Enterprise, offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

8

34.    Berger, a resident of Tampa, Florida, within this District, is an attorney licensed to practice in Florida and is the President of Defendant The Berger Law Group. He is the Enterprise's newest front man, has managerial responsibility for the Enterprise and materially participates in the conduct of its affairs.

35.    At all times material to this complaint, Berger transacts or has transacted business in the Middle District of Florida.

36.    Defendant The Resolution Law Group, P.C., ("RLG") is a Connecticut corporation formed by Broderick on or about November 22, 2011. Its current address is a virtual office located at 500 West Putnam Avenue, Suite 400, Greenwich, Connecticut, but it has also used another virtual office address located at 100 Park Avenue, Suite 1600, New York, NY. The original front for the Enterprise, RLG offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

37.    Virtual offices aside, RLG operates largely from an office suite located at 4100 W. Kennedy Boulevard, Suite 300, Tampa, Florida, where Friedman and Berger continue to work, and where DiGirolamo and Broderick visited on multiple occasions.

38.    At all times material to this complaint, RLG transacts or has transacted business in the Middle District of Florida.

39.    Defendant The Berger Law Group, P.A., ("BLG") is a Florida corporation formed by Berger on or about August 13, 2013. Its current address is 4100 W. Kennedy Boulevard, Suite 300, Tampa, Florida. The newer, second front of the RLG/BLG Enterprise, BLG offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

9

40. At all times material to this complaint, BLG transacts or has transacted business in the Middle District of Florida.

41. Defendant Resolution Law Center, LLC, is a Florida limited liability company formed by Friedman on or about December 8, 2011. Its current address is also 4100 W. Kennedy Boulevard, Suite 300, Tampa, Florida. As one of the companies that solicits consumers for the RLG/BLG Enterprise, it offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

42. At all times material to this complaint, Resolution Law Center transacts or has transacted business in the Middle District of Florida.

43. Defendant Litigation Law, LLC is an administratively dissolved Florida limited liability company. On information and belief, it was formed by DiGirolamo on or about May 20, 2011. The address of record is 6469 102nd Avenue North, Pinellas Park, Florida. As one of the companies that allows DiGirolamo to profit monetarily from the Enterprise, it offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

44. At all times material to this complaint, Litigation Law, LLC transacts or has transacted business in the Middle District of Florida.

45. Together, Defendants have engaged in an ongoing, illicit mortgage relief scheme that preys on homeowners nationwide. As pleaded more specifically below, Defendants DiGirolamo, Broderick, Berger, and Friedman have acted in concert to operate the corporate Defendants as a common enterprise in order to carry out this scheme.

46. At all times material to this Complaint, the individual Defendants have materially participated in the conduct of the RLG/BLG Enterprise's affairs, including the development and

approval of the purported mortgage assistance relief services complained of herein. Each of the individual Defendants are intimately familiar with and direct the RLG/BLG Enterprise's operations, including its purported mortgage assistance relief services, and knew of and approved all of the practices described in this Complaint.

## BACKGROUND ON DEFENDANTS' SCHEME

47.    The operation of the RLG/BLG Enterprise is substantially controlled by Defendant DiGirolamo, a non-attorney who was at the center of a strikingly similar scam based in California. That scam was the subject of an enforcement action brought by the California Attorney General in August 2011. The complaint alleged that DiGirolamo oversaw the scam's marketing and sales operations.

48.    The California action resulted in entry of a final judgment and permanent injunction against DiGirolamo and two companies that he controlled on June 5, 2013. DiGirolamo was enjoined from, among other things, making misrepresentations to consumers regarding any proposed or actual lawsuit against lenders, including potential outcomes, benefits, or foreclosure relief that such lawsuits may provide.

49.    Almost immediately after the commencement of the California action, DiGirolamo took steps to establish a new mass-joinder operation, the RLG/BLG Enterprise, based in Florida but with a virtual presence also in Connecticut, and recruited Friedman, Broderick, and Berger to assist him with the scam.

50.    By November 2011, the RLG/BLG Enterprise, through Broderick, had established a fake "virtual office" address for RLG, its Connecticut based, law-firm front. Although the RLG/BLG Enterprise has routinely used the 500 West Putnam Avenue, Suite 400, Greenwich, Connecticut, address on its mailers, website, emails, and other communications with consumers,

it has no physical presence in Connecticut. In fact, Broderick resides in California and has never even visited the address of the virtual office in Connecticut.

51.     In November 2011, the RLG/BLG Enterprise also established a website for RLG, largely using narrative content copied verbatim from the websites of large regional and national law firms.

52.     By early 2012, the RLG/BLG Enterprise was conducting business from its real base of operations in Florida, which continues to handle intake, sales, collections, and other functions of the scam.

53.     Beginning in mid-2013, the Enterprise began laying the groundwork for introducing BLG as a new front for the Enterprise. These preparations included creating a BLG Facebook page and BLG website (largely copied from the RLG website, including scattered vestigial references to RLG) in July 2013, and incorporating as a Florida corporation in August 2013.

54.     By January 2014, attorneys with BLG began entering notices of appearances in all cases originally filed by RLG.

55.     In February 2014, Defendant Berger assumed financial responsibility for RLG's virtual office in Connecticut.

56.     In April 2014, Defendant Berger requested that all mail addressed to RLG's virtual office in Connecticut be forwarded to "The Resolution Law Group: 4100 W. Kennedy Blvd., Suite 400, Tampa, Florida 33609" with a Connecticut phone number listed as the contact number.

57.     These changes from RLG to BLG were described to consumers as "more or less administrative changes."

12

## DEFENDANTS RELY ON A DECEPTIVE SALES SCHEME

58.    To induce consumers to purchase its services, the RLG/BLG Enterprise uses various marketing methods, including but not limited to websites, direct mailers, social media, email, and electronic brochures.

59.    Through these advertisements, the RLG/BLG Enterprise claims that it will include consumers in mass-joinder lawsuits and represent to consumers that this will help them get mortgage modifications and relief from foreclosure.  The RLG/BLG Enterprise also suggests that it can help consumers get a reduction or forgiveness of their mortgage loan, reduced interest rate, and that it intends to delay or stop foreclosure.

60.    RLG and BLG have falsely claimed or implied that they have multiple attorneys on staff with significant experience litigating complex civil cases and that the mass-joinder cases have a high likelihood of resulting in the consumer receiving a loan modification with favorable terms.

### Defendants' Deceptive Mail Solicitations

61.    The RLG/BLG Enterprise targets consumers throughout the United States who are in financial distress, behind on their mortgage loans, or in danger of losing their homes to foreclosure.  Specifically, the RLG/BLG Enterprise obtains lists of the names and addresses of consumers who are at least three months behind on their mortgage payments.

62.    The RLG/BLG Enterprise often solicits consumers through direct mailers that are designed to resemble a class action notification and create a sense of urgency.  For example, the RLG/BLG mailers identify one of the law firm fronts, RLG, and provide its Connecticut address and website and instruct consumers to call a telephone number.

63.     Defendants' mailers suggest that they can help consumers get a reduction or forgiveness of their mortgage loan, reduce interest rates, delay or stop foreclosure, and receive monetary compensation for damages.

64.     Defendants' mailers also typically state that "[o]ur office is investigating claims against [name of bank] for potentially fraudulent lender/servicer actions. . . .  [W]e will seek monetary relief; ATTEMPT to delay or stop foreclosures; and/or seek compensation for damages. . . . You may be excluded as a plaintiff in a National Lawsuit against [bank], don't delay, case enrolment [sic] or case amendment time will vary from case to case."

### Defendants' Deceptive Websites and Social Media Communications

65.     The RLG/BLG Enterprise maintains the RLG and BLG websites containing similar claims.  The websites are designed to resemble those of experienced law firms with sophisticated and varied litigation practices.

66.     However, almost all of the narrative information describing RLG and BLG was plagiarized from the websites of various large regional and national law firms, including extensive verbatim excerpts from the national law firm Carlton Fields Jorden Burt and the Houston, Texas law firm of Gibbs & Bruns LLP.

67.     The RLG and BLG websites contain numerous misrepresentations and false statements that are designed to deceive consumers into believing that each is a legitimate and experienced law firm.  In reality, RLG and BLG are mere fronts for the RLG/BLG Enterprise, with no experience outside of the dubious mortgage rescue, mass-joinder context.

68.     The RLG/BLG Enterprise also maintains several social media accounts including Twitter, Linkedin, and Facebook that it has used to make numerous false, misleading, and deceptive representations to consumers.

14

**Defendants' Deceptive Telemarketing And Other Sales Practices**

69.      Consumers who respond to the RLG/BLG Enterprise's marketing efforts typically are having difficulty making their monthly mortgage payments.

70.      When consumers call the toll-free numbers provided on the mailers and website, they are connected to one of the RLG/BLG Enterprise's telemarketing boiler rooms and are subjected to high pressure sales tactics by commission-based, non-attorney sales agents.

71.      Using scripts written by non-attorneys, the sales agents ask consumers a series of general "qualifying" questions designed to create the appearance of exclusivity and legitimacy. In reality, no consumer is ever deemed ineligible. Eligibility is based solely on the ability to pay the RLG/BLG Enterprise's unlawful upfront fees.

72.      In some instances, the RLG/BLG Enterprise's sales agents obtain the email addresses of consumers and send them additional marketing material in the form of an electronic brochure that promotes the Enterprise. Like the RLG website, the brochure contains numerous misrepresentations and false statements that are designed to deceive consumers into believing that RLG is a legitimate law firm. One version of the electronic brochure falsely claims that RLG has an affiliation with two attorneys at a different law firm.

73.      The direct mailers, websites, electronic brochure, social media communications, and sales agents all suggest to consumers that the RLG/BLG Enterprise can help consumers obtain loan modifications that would substantially lower consumers' monthly mortgage payments or interest rates by including them in mass-joinder lawsuits.

74.      In some instances, Defendants' sales pitch and marketing materials also deceive consumers by making reference to "full lien strips," "loan nullification," and "complete dismissal" of loans.

**Defendants' Upfront Fees**

75.    Only after consumers express interest in participating are they told about the required upfront fees.  Neither the marketing materials, nor the initial sales pitch informs consumers about the upfront fees charged by the RLG/BLG Enterprise.

76.    To convince consumers to pay the upfront fee, the RLG/BLG Enterprise often makes promises about what consumers can gain from being included in a mass-joinder suit, including a 2-4% fixed interest rate, 70% reduction in principal balance, forgiveness of past missed payments, credit restoration, monetary compensation of around $70,000, and a speedy resolution.  The RLG/BLG Enterprise falsely tells consumers that other mass-joinder cases brought by the RLG/BLG Enterprise have settled on favorable terms.

77.    The RLG/BLG Enterprise charges a varying upfront fee, but the typical fee is a $6,000 initial fee, which may be broken into multiple payments.  The Enterprise typically charges consumers a $500 monthly "maintenance" fee after they have paid the first $6,000.  In some instances, consumers are not told about the maintenance fee until after they have paid the upfront fee.  Defendants often adjust the amounts charged to individual consumers based on their ability to continue to pay, in contrast to the legal fee structure alluded to in the retainers signed by RLG/BLG clients.

78.    Although the Enterprise's sales agents do not mention it to consumers, in some instances the RLG/BLG "retainer" agreement sent to consumers contains a contingency fee provision, which states that consumers will be charged 30% of any "gross recovery" or principal reduction obtained as a result of the lawsuit.

79.    The RLG/BLG Enterprise does not place fees obtained from consumers in escrow accounts or maintain records of time spent working on individual consumers' case files.  Nor

16

does it maintain billing records or provide consumers with itemized invoices detailing the work it purports to do.

## Defendants' Unauthorized Charges

80.     In some instances, Defendants surreptitiously attempt to charge consumers more than the agreed-upon monthly fee, by making unauthorized credit card and debit account charges.

## Defendants' Harmful Statements and Failures To Disclose

81.     Many of Defendants' solicitations fail to disclose in a clear and prominent manner that: (i) the consumer may stop doing business with Defendants or reject an offer of mortgage assistance without having to pay for the services; (ii) Defendants' companies are not associated with the government or approved by the government or the consumer's lender; and (iii) Even if the consumer uses the RLG/BLG Enterprise's service, the consumer's lender may not agree to modify the loan.

82.     Where Defendants' solicitations make any of these disclosures, Defendants fail to make the disclosures in a clear and prominent manner:  They are not preceded by the heading "IMPORTANT NOTICE" and they are made in a font size that is smaller than 12-point type.

83.     Defendants often misrepresent the likelihood and extent to which the mass-joinder lawsuits will benefit consumers and in some instances falsely imply that the mass-joinder lawsuits have resulted in favorable settlements for consumers.

84.     Defendants often give the impression or falsely claim that they will handle communications with consumers' lenders and servicers.

85.    In some instances, the RLG/BLG Enterprise has encouraged consumers to pay fees to the Enterprise even when consumers could not afford to pay fees to RLG or BLG and also make their mortgage payments.

## THE RLG/BLG ENTERPRISE DOES NOT OBTAIN THE PROMISED RESULTS AND CAUSES CONSUMER INJURY

86.    After consumers pay the RLG/BLG Enterprise's upfront fees, Defendants almost always fail to obtain the promised results or even perform the promised services. Specifically, Defendants often fail to apply for or obtain loan modifications on behalf of the consumers or negotiate with lenders to substantially reduce consumers' mortgage payments, and make no attempt to delay or stop foreclosure.

87.    Defendants often describe the upfront fee as an "investigation" fee. However, they make no meaningful effort to investigate anything. Although Defendants ask consumers to provide copies of mortgage loan documents, beyond collecting such documents, Defendants do no investigation into consumers' individual circumstances or otherwise analyze potential claims that individual consumers may have against their lenders. Nor do Defendants even request the most basic information that would be needed for consumers to apply for a loan modification from their lenders.

88.    After consumers have paid their fees, the RLG/BLG Enterprise often fails to answer or promptly return consumers' telephone calls and emails and fails to provide accurate updates to consumers.

89.    When consumers are able to reach the RLG/BLG Enterprise, they are told that Defendants are making progress in the mass-joinder lawsuits and that the consumers should continue paying the fees. To assuage consumer concerns about the progress of the lawsuits,

18

Defendants cite examples of other consumers who received loan modification offers from lenders, falsely taking credit for the result.

90.     One of Defendants' major selling points to consumers has been to tout that lenders will be more willing to negotiate with RLG and BLG because they are filing litigation with a voluminous number of plaintiffs.  In most instances, Defendants do file the promised mass-joinder for consumers who enroll.  But, beginning in May 2013, courts began dismissing claims and severing all but the first-named plaintiffs from these actions.  Nevertheless, more than a year later, Defendants have continued to rely on the same mass-joinder theory to solicit additional consumers, knowing that this tactic has been rejected by the courts.

91.     The RLG/BLG Enterprise fails to accurately inform consumers about the progress of the mass-joinder lawsuits, misrepresents the effect of adverse court rulings such as dismissals, and in some instances fails to notify consumers about the dismissals altogether.  When consumers inquire, Defendants make further misrepresentations intended to convince consumers to continue making payments for participation in the litigation, including spinning dismissals as a positive development.

92.     In some instances, the RLG/BLG Enterprise fails to include consumers on any mass-joinder complaint or fails to inform consumers regarding dismissal of their complaints, despite continuing to collect fees from such consumers.

93.     Consumers who pay the RLG/BLG Enterprise's fees suffer substantial economic injury.  Further, because they believe that the RLG/BLG Enterprise is working on their cases, many consumers postpone or forego seeking other relief that may be available to them, such as working directly with their lender, using a HUD-certified non-profit housing counselor, or entering foreclosure mediation, to their detriment.

19

94.    The RLG/BLG Enterprise continues to operate even though its central figure, DiGirolamo, has been permanently enjoined by a court in California from making misrepresentations to consumers about proposed or actual litigation against lenders.

## ROLE OF CORPORATE DEFENDANTS
## AS A COMMON ENTERPRISE

95.    The individual Defendants DiGirolamo, Broderick, Berger, and Friedman have acted in concert to operate the RLG scheme by using the corporate Defendants as a common Enterprise.  The individual Defendants have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the corporate Defendants that constitute the common Enterprise.

96.    The corporate Defendants Resolution Law Group, Berger Law Group, Resolution Law Center, and Litigation Law have operated under the common control of the individual Defendants through an interrelated maze of companies that used common managers, business functions, expenses, employees, advertising, and office locations in order to transact an integrated business.

97.    Indeed, each of the corporate entities exists to participate in the same mortgage assistance relief operation:  The Resolution Law Group (the initial law firm front) and the Berger Law Group (the second, additional law firm front) file the mass-joinder lawsuits and give consumers the impression that they are paying a legitimate and experienced law firm; the Resolution Law Center (the telemarketing boiler room) convinces consumers to make payments to the RLG/BLG Enterprise; and Litigation Law funnels the final profits to DiGirolamo.

98.    Because they operate under the common control of the individual Defendants DiGirolamo, Broderick, Berger, and Friedman as a common Enterprise, each of the corporate Defendants is jointly and severally liable for the acts and practices alleged herein.

20

99.     The companies in the Enterprise comingle finances.  For example, the RLG/BLG Enterprise frequently shifts money between the accounts of the corporate Defendants and to accounts controlled by the individual Defendants.  In addition, in some instances, the RLG/BLG Enterprise transfers funds between corporate Defendants to cover various operating expenses, including rent for office space and postage costs.  In some instances, the shared employees of the RLG/BLG Enterprise receive compensation from different corporate Defendants.

100.    BLG and the Resolution Law Center share a common address and operate out of the same suite within the same building in Tampa, Florida.

101.    The RLG/BLG Enterprise often fails to distinguish between RLG and BLG in communications with consumers, frequently referring to both entities within the same communication.  In some instances, BLG employees use RLG email addresses.  In addition, BLG employees sometimes send consumers facsimiles using cover pages that identify the Resolution Law Center, but that contain correspondence to consumers that use signature blocks that include the name, address, and website of RLG.

102.    The corporate Defendants in the RLG/BLG Enterprise all exist for the single purpose of selling consumers mortgage assistance relief services and splitting the profits among the individual Defendants; none of the corporate Defendants has any other apparent business purpose.

## VIOLATIONS OF REGULATION O

103.    In 2010, the Federal Trade Commission promulgated the MARS Rule to prohibit unfair and deceptive acts and practices with respect to mortgage loan or foreclosure relief services. 16 C.F.R. Part 322. In the CFPA, Congress transferred rulemaking authority over the MARS Rule to the Consumer Financial Protection Bureau, which recodified the Rule as 12

C.F.R. Part 1015, and designated it "Regulation O." The State of Florida and the State of

Connecticut have authority to enforce Regulation O under 12 U.S.C. § 5538(b)(1) and 12 C.F.R.

§ 1015.10 (2012). (References below to "Regulation O" encompass both Regulation O and the

MARS Rule.)

104.    Regulation O defines "mortgage assistance relief service" as "any service, plan, or

program, offered or provided to the consumer in exchange for consideration, that is represented,

expressly or by implication, to assist or attempt to assist the consumer with . . . [n]egotiating,

obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in

the amount of interest, principal balance, monthly payments, or fees . . . ." 12 C.F.R. § 1015.2

(2012).

105.    Regulation O defines "mortgage assistance relief service provider" as "any person

that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief

service," other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or

contractor of such individual or entity. 12 C.F.R. § 1015.2 (2012).

106.    Defendants are "mortgage assistance relief service provider[s]" engaged in the

provision of "mortgage assistance relief services" as those terms are defined in Regulation O. 12

C.F.R. § 1015.2 (2012).

107.    Regulation O prohibits any mortgage assistance relief service provider from

requesting or receiving payment of any fee or other consideration until the consumer has

executed a written agreement between the consumer and the consumer's loan holder or servicer

that incorporates the offer that the provider obtained from the loan holder or servicer. 12 C.F.R. §

1015.5(a) (2012).

108.    Regulation O further prohibits any mortgage assistance relief service provider from misrepresenting, expressly or by implication, material aspects of their services. This prohibition includes, but is not limited to, misrepresenting to consumers the benefits, performance or efficacy of any mortgage assistance relief service, in violation of Regulation O, 12 C.F.R. § 1015.3(b) & (c) (2012).

109.    Regulation O requires  any mortgage assistance relief service provider,  in every *general* commercial communication, as defined by 12 C.F.R. § 1015.2, to disclose that:  (1) the provider is not associated with the government and its service is not approved by the government or the consumer's lender; and (2) in cases where the provider has represented, expressly or by implication, that consumers will receive certain services or results, a statement disclosing that the consumer's lender may not agree to modify a loan, even if the consumer uses the provider's service.  12 C.F.R. § 1015.4(a)(1)-(2) (2012). Regulation O requires these disclosures to be placed in a "clear and prominent manner," and when made in textual communications, they must "be preceded by the heading 'IMPORTANT NOTICE,' which must be in bold face font that is two point-type larger than the font size of the required disclosures." When made orally or through other audible means, "the required disclosures must be preceded by the statement 'Before using this service, consider the following information.'" 12 C.F.R. § 1015.4(a)(3) (2012).

110.    Regulation O further requires  any mortgage assistance relief service provider, in every *consumer-specific* commercial communication, as defined by 12 C.F.R. § 1015.2, to disclose: (1) that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services; (2) that the provider is not associated with the government and its service is not approved by the government or the consumer's lender;

and (3) in cases where the provider has represented, expressly or by implication, that consumers will receive certain services or results, disclosing that the consumer's lender may not agree to modify a loan, even if the consumer uses the provider's service. 12 C.F.R. § 1015.4(b)(1)-(3) (2012). Regulation O requires these disclosures to be placed in a "clear and prominent manner," and when made in textual communications, must "be preceded by the heading "IMPORTANT NOTICE," which must be in bold face font that is two point-type larger than the font size of the required disclosures." When made orally or through other audible means, "the required disclosures must be preceded by the statement 'Before using this service, consider the following information' and, in telephone communications, must be made at the beginning of the call." 12 C.F.R. § 1015.4(b)(4) (2012).

111.    Regulation O defines "clear and prominent manner," as used in the disclosure requirements listed above, as requiring the textual disclosures to be made in, "at a minimum, the larger of 12-point type or one-half the size of the largest letter or numeral used in the name of the advertised Web site or telephone number to which consumers are referred." 12 C.F.R. § 1015.2 (2012).

112.    Regulation O further provides that it is a violation "for a person to provide substantial assistance or support to any mortgage assistance relief service provider when that person knows or consciously avoids knowing that the provider is engaged in any act or practice that violates" the rule. 12 C.F.R. § 1015.6 (2012).

113.    Under section 1097 of the CFPA, 12 U.S.C. § 5538, a violation of Regulation O constitutes an unfair, deceptive, or abusive act or practice under the CFPA, in violation of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536.

## COUNT I

**(Advance Fees in Violation of Regulation O)**
**(Asserted by Florida and Connecticut Against All Defendants)**

114.    The allegations in paragraphs 1 through 113 above are incorporated here by reference.

115.    In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have asked for or received payment from consumers before those consumers have executed a written agreement that incorporates the offer obtained by Defendants with the loan holder or servicer in violation of Regulation O, 12 C.F.R. § 1015.5(a) (2012).

## COUNT II

**(Misrepresentations in Violation of Regulation O)**
**(Asserted By Florida and Connecticut Against All Defendants)**

116.    The allegations in paragraphs 1 through 113 above are incorporated here by reference.

117.    In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have misrepresented, expressly or by implication, material aspects of their services, and have misrepresented the benefits, performance or efficacy of any mortgage assistance relief service, in violation of Regulation O, 12 C.F.R. § 1015.3(b) & (c) (2012).

## COUNT III

**(Failure to Make Certain Disclosures in Violation of Regulation O)**
**(Asserted By Florida and Connecticut Against All Defendants)**

118.    The allegations in paragraphs 1 through 113 above are incorporated here by reference.

25

119.    In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have:

    a)  violated Regulation O, 12 C.F.R. § 1015.4(a)(1),(2), by failing to make the following disclosures in all general commercial communications in a clear and prominent manner –

- "[The Resolution Law Group or The Berger Law Group] is not associated with the government, and our service is not approved by the government or your lender;" and

- "Even if you accept this offer and use our service, your lender may not agree to change your loan;"

    b)  violated Regulation O, 12 C.F.R. § 1015.4(b)(1),(2),(3), by failing to make the following disclosures in all consumer-specific commercial communications in a clear and prominent manner –

- "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us (insert amount or method for calculating the amount) for our services;"

- "[The Resolution Law Group or The Berger Law Group] is not associated with the government, and our service is not approved by the government or your lender;" and

- "Even if you accept this offer and use our service, your lender may not agree to modify your loan;" and

   c) violated Regulation O, 12 C.F.R. § 1015.4(c) by failing to make the following

disclosure in all communications in cases where Defendants have represented,

expressly or by implication, in connection with the advertising, marketing,

promotion, offering for sale, sale, or performance of any mortgage assistance

relief service, that the consumer should temporarily or permanently

discontinue payments, in whole or in part, on a dwelling loan, clearly and

prominently, and in close proximity to any such representation: "If you stop

paying your mortgage, you could lose your home and damage your credit

rating."

## VIOLATIONS OF FLORIDA STATE LAW

## <u>COUNT IV</u>

**(Violations of the Florida Deceptive and Unfair Trade Practices Act)**
**(Asserted By Florida Against All Defendants)**

120.    The allegations in paragraphs 1 through 113 are incorporated here by reference.

121.    Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act,

Chapter 501, Part II, Florida Statutes, states that "unfair methods of competition, unconscionable

acts or practices, and unfair or deceptive acts or practices in the conduct of any trade of

commerce are hereby declared unlawful."

122.    A person that willfully engages in a deceptive or unfair act or practice is liable for

a civil penalty of $10,000 for each such violation; willful violations occur when the person knew

or should have known that the conduct in question was deceptive or unfair or prohibited by rule,

Section 501.2075, Florida Statutes.

123.    Section 501.203(8), Florida Statutes, defines "trade or commerce" as:

... the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

124.    At all times material hereto, Defendants have engaged in "trade or commerce" as defined by Section 501.203(8), Florida Statutes.

125.    At all times material hereto, Defendants have engaged in deceptive, unfair, and unconscionable acts that include but are not limited to designing, creating, and sending out to consumers direct mail pieces, and maintaining websites that contained misleading information that have given consumers the impression that Defendants' proposed mass-joinder litigation would be able to help homeowners who are having difficulty making their monthly payment to negotiate their mortgage terms or to stop and resolve residential foreclosure proceedings.

126.    Defendants DiGirolamo, Broderick, Berger, and Friedman have directed or controlled, or have had the authority to direct and control, the practices engaged in by the RLG/BLG Enterprise. The false and misleading solicitation to consumers of inclusion in mass-joinder lawsuits by Defendants concerns the "providing . . . of any . . . service," which is specifically defined as trade or commerce by Section 501.203, Florida Statutes.

127.    Defendants have willfully engaged in the acts and practices because they know or should have known that such acts and practices are unfair or deceptive or otherwise prohibited by law.

128.    These above-described acts and practices of Defendants have substantially injured and will likely continue to injure and prejudice the public. Further, these substantial injuries are

not outweighed by any countervailing benefits to consumers or competition, and are not injuries that the consumers themselves could have reasonably avoided.

129.   Unless Defendants are permanently enjoined from engaging further in the acts and practices complained of herein, Defendants' actions will result in irreparable injury to the public for which there is no adequate remedy at law.

## COUNT V

### (Civil Theft)
### (Asserted by Florida against all defendants)

130.   The allegations in paragraphs 1 through 113 above are incorporated here by reference.

131.   Section 812.014(1), Florida Statutes, states that a person commits theft if he or she knowingly obtains or uses the property of another with the intent to deprive another person of a right to property and appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

132.   Defendants have collected millions of dollars from consumers around the country to obtain mortgage assistance relief services through the filing of mass-joinder lawsuits under the guise that the mass-joinder litigation has a high likelihood of resulting in a modification of mortgage terms favorable to the consumer, which Defendants knew or should have known to be untrue.

133.   Defendants have failed to inform or have misinformed clients who have been listed as plaintiffs in mass-joinder actions about the status of their cases, the consequences of the respective court rulings (such as dismissal), and the likelihood of obtaining the desired mortgage assistance relief through the litigation in order to induce the clients to keep paying monthly fees to continue to participate in the litigation.

134.    Upon information and belief, Defendants have not removed clients as plaintiffs in filed mass-joinder litigation for failure to pay monthly fees. Yet, they indicate to currently paying clients that they will be removed from the litigation if they stop paying the monthly fee, and numerous clients have continued to pay the monthly fees based upon those representations.

135.    Defendants have also knowingly double-charged consumers and made other unauthorized charges to consumers' accounts.

136.    Defendants DiGirolamo, Broderick, Berger, and Friedman have directed and controlled, or had the authority to direct and control, the practices engaged in by the RLG/BLG Enterprise.

137.    Defendants have known or should have known that they cannot legally provide these services to clients of RLG and BLG.

138.    The litigation services purportedly offered by Defendants through the RLG/BLG Enterprise will not provide the promised results to RLG and BLG clients. In fact, the litigation is being filed with the knowledge that the vast majority of the claims will be dismissed. When claims are dismissed, the RLG/BLG Enterprise then re-files the same or similar litigation (or at least leads the consumer to believe it is re-filing the litigation) to induce the clients to continue paying their monthly fees so that they can remain in the mass-joinder litigation.

139.    The monies collected by Defendants are obtained with the intent to deprive the victims of the money and are appropriated for the use of Defendants and others not entitled to the funds.

140.    Section 812.035(5), Florida Statutes, authorizes Plaintiff to seek relief for violations of Section 812.014, Florida Statutes, including ordering a defendant to divest himself

of any interest in any enterprise and imposing reasonable restrictions on the future activities or investments of any defendant.

141.    Defendants' actions have deprived numerous consumers of the monies paid for services that were never rendered, and all such consumers are entitled to full restitution from Defendants.

## VIOLATIONS OF CONNECTICUT STATE LAW

## <u>COUNT VI</u>

### (Violations of the Connecticut Unfair Trade Practices Act)
### (Asserted By Connecticut Against All Defendants)

142.    The allegations in paragraphs 1 through 113 above are incorporated here by reference.

143.    The Connecticut Unfair Trade Practices Act (CUTPA), Connecticut General Statutes § 42-110b(a) states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

144.    Connecticut General Statutes § 42-110a(4) states that "trade" and "commerce" shall mean the "advertising, the sale or rent or lease, the offering for sale or lease, or the distribution of any service or any property, tangible or intangible, real, personal or mixed, and any article, commodity, or thing of value in this state."

145.    Connecticut General Statutes § 42-110b(b) states that "[i]t is the intent that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

146.    In determining whether a practice violates the Connecticut Unfair Trade Practices Act, the Connecticut Supreme Court has adopted the criteria set out in the 'cigarette rule' by the Federal Trade Commission for determining whether a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; or (3) whether it causes substantial injury to consumers.

147.    The Connecticut Supreme Court has set forth a three part test for satisfying the substantial injury criterion of the 'cigarette' rule: (i) the injury must be substantial; (ii) it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (iii) it must be an injury that consumers themselves could not reasonably have avoided.

148.    Under CUTPA, an act or practice is deceptive where a representation, an omission or conduct is likely to mislead a consumer, interpreting it reasonably under the circumstances, about a material fact or circumstance.

149.    Defendants have engaged in trade or commerce in the State of Connecticut by advertising to Connecticut consumers, by offering the distribution of a service for value to Connecticut consumers, and by using a Connecticut law firm as a front and a Connecticut location as a purported physical address.

150.    In the course of engaging in such trade or commerce, Defendants have engaged in the following unfair or deceptive acts or practices in violation of Connecticut General Statutes § 42-110b(a):

32

a) Defendants send consumers direct mail advertisements which contain numerous false, misleading, and deceptive representations;

b) Defendants maintain a website for the purpose of advertising to consumers which contains numerous false, misleading, and deceptive representations;

c) Defendants use social media tools to make false, misleading, and deceptive representations to consumers;

d) Defendants and their telemarketing sales agents make false, misleading, and deceptive representations to consumers;

e) Defendants and their agents make false, misleading, and deceptive representations to consumers regarding the fees charged by the RLG/BLG Enterprise;

f) Defendants and their agents make false, misleading, and deceptive representations to consumers regarding the loan modification assistance they purport to provide and their ability to obtain loan modifications for consumers;

g) Defendants and their agents make false, misleading, and deceptive representations to consumers regarding the foreclosure assistance they purport to provide and their ability to delay or stop foreclosure;

h) Defendants and their agents make false, misleading, and deceptive representations to consumers regarding the effect of participating in the mass-joinder lawsuits;

33

i)  Defendants and their agents make false, misleading, and deceptive representations to consumers regarding the results obtained and outcomes of the prior mass-joinder lawsuits they have filed;

j)  Defendants and their agents make false, misleading, and deceptive representations to consumers regarding the status of the mass-joinder lawsuits;

k)  Defendants and their agents make false, misleading, and deceptive representations to consumers regarding dismissals of the mass-joinder lawsuits; and

l)  Defendants and their agents attempt to charge consumers more than the agreed upon monthly fee, by making unauthorized credit card and debit account charges.

151.    Defendants' acts and practices are unfair, unlawful, unethical, immoral, oppressive, unscrupulous, and offend public policy.

152.    Defendants' representations, omissions, and conduct are likely to mislead consumers about material facts or circumstances.

153.    Defendants acts and practices have caused unjustified injuries to consumers, which are (i) substantial; (ii) cannot be outweighed by countervailing benefits of the practice to consumers; and (iii) could not have been reasonably avoided by consumers.

## COUNT VII

**(Civil Penalties Pursuant to Conn. Gen. Stat. § 42-110o(b))**
**(Asserted By Connecticut Against All Defendants)**

154.    The allegations in paragraphs 1 through 113 above are incorporated here by reference.

34

155.    Defendants engaged in the acts or practices alleged herein when they knew or should have known that their conduct was unfair or deceptive, in violation of Connecticut General Statutes § 42-110b(a), and therefore, are liable for civil penalties of up to $5,000 per willful violation pursuant to Conn. Gen. Stat. § 42-110o(b).

## CONSUMER INJURY

156.    Defendants' violations of Regulation O and of state laws prohibiting unfair and deceptive practices have caused consumers to suffer past and ongoing substantial injury.  In addition, Defendants' illegal acts or practices have caused the unjust enrichment of Defendants. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THE COURT'S POWER TO GRANT RELIEF

157.    The CFPA empowers this Court to grant any appropriate legal or equitable relief to prevent and remedy any violation of federal consumer protection laws. 12 U.S.C. § 5565. This includes, without limitation, a permanent or temporary injunction, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement or compensation for unjust enrichment. *Id.* It further includes monetary relief that includes but is not limited to civil money penalties. *Id.*

158.    The counts based upon the Florida Deceptive and Unfair Trade Practices Act and Section 812.035(5), Florida Statutes may be enforced by this Court through its supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and this Court may award relief under Chapter 501, Part II, Florida Statutes, and Section 812.035(5), Florida Statutes, including injunctive relief, restitution, costs and attorneys' fees, and such other relief to which the State of Florida may be entitled.

159.    The counts based upon the Connecticut Unfair Trade Practices Act may be enforced by this Court through its supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and this Court may award relief under Conn. Gen. Stat. §§ 42-110m(a) and 42-110o(b).

## PRAYER FOR RELIEF

160.    Wherefore, Plaintiffs, pursuant to 12 U.S.C. §§ 5538(b)(1), 5552 & 5565, and the Court's own powers to grant legal or equitable relief, request that the Court:

- enter a permanent injunction to prevent future violations of Regulation O by Defendants;

- award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of Regulation O, including but not limited to rescission or reformation of contracts, the refund of monies paid, restitution, and disgorgement or compensation for unjust enrichment;

- award Plaintiffs civil money penalties; and

- award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

161.    Wherefore, The Florida Attorney General, pursuant to Chapter 501, Part II, Florida Statutes, and Section 812.035(5), Florida Statutes, and the Court's own power to grant legal or equitable relief, requests that the Court:

- enter judgment in favor of Plaintiff Office of the Attorney General, State of Florida, Department of Legal Affairs, and against Defendants, jointly and severally, on Counts IV and V;

- enter an order permanently enjoining and restraining Defendants, their agents, employees and all other persons or entities, corporate or otherwise, acting in

36

active concert or participation with or on behalf of any of them, from engaging in, or affiliating with, any of the following: (A) any business purporting to offer "foreclosure-related rescue services," as defined in Section 501.1377, Florida Statutes, or "mortgage assistance relief services," as defined by 12 C.F.R. § 1015; (B) any business purporting to offer financial services to consumers, including, but not limited to, loan modification, mortgage brokering, loan brokering, any form of debt management, credit counseling, debt settlement, or investment management services; (C) any business purporting to offer real estate services to consumers; (D) engaging in, or assisting with, the unlicensed practice of law, directly or indirectly, in Florida; and (E) any business that engages in "commercial telephone solicitation," as defined by Section 501.603, Florida Statutes;

- order Defendants, jointly and severally, to pay full restitution to each of the consumers who paid for mortgage assistance relief services from the RLG/BLG Enterprise;

- order disgorgement of all monies collected by Defendants from consumers in accordance with Section 812.035(5), Florida Statutes;

- assess civil penalties against Defendants, jointly and severally, in the amount of Ten Thousand Dollars ($10,000) for each violation of Chapter 501, Part II, Florida Statutes;

- award reasonable attorneys' fees and costs pursuant to Sections 501.2075 and 501.2105, Florida Statutes; and

- grant such other relief as the Court deems just and proper, including, but not limited to, all other relief allowable under Sections 501.207(3) and 812.035, Florida Statutes.

162.   Wherefore, Plaintiff State of Connecticut, pursuant to the Connecticut Unfair Trade Practices Act, Chapter 735a of the Connecticut General Statutes, and the Court's own powers to grant legal or equitable relief, requests that the Court:

- enter judgment for the State of Connecticut on Counts VI and VII;

- enter an order, pursuant to Conn. Gen. Stat. § 42-110m, permanently enjoining and restraining Defendants, their agents, employees and all other persons or entities, corporate or otherwise, acting in active concert or participation with or on behalf of any of them, from further violations of General Statutes § 42-110b;

- enter an order, pursuant to Conn. Gen. Stat. § 42-110o(b) directing Defendants to pay civil penalties of not more than $5,000 for each willful violation of Conn. Gen. Stat. § 42-110b(a);

- enter an order, pursuant to Conn. Gen. Stat. § 42-110m(a), directing Defendants to pay an award of reasonable attorneys' fees; and

- enter an order granting such further relief as the Court deems just and equitable.

Dated: July 29, 2014                     Respectfully Submitted,


                                         Attorneys for Plaintiff
                                         Office of the Attorney General
                                         The State of Florida,
                                         Department of Legal Affairs

Pamela Jo Bondi
Attorney General

Victoria A. Butler
Attorney Supervisor/Bureau Chief

Amanda Arnold Sansone, FL Bar # 587311
amanda.sansone@myfloridalegal.com
Richard Schiffer, FL Bar #74418
richard.schiffer@myfloridalegal.com
3507 East Frontage Road #325
Tampa, Florida 33607
Phone: 813-287-7950
Fax: 813-281-5515

and

Attorney for Plaintiff
The State of Connecticut

George Jepsen
Attorney General

Joseph J. Chambers, CT 26948
Assistant Attorney General
joseph.chambers@ct.gov
Connecticut Office of the Attorney General
P.O. Box 120
55 Elm Street
Hartford, CT 06141-0120
Phone: 860-808-5270
Fax: 860-808-5385

Nicole Ayala, CT 29575
Special Assistant Attorney General
nicole.ayala@ct.gov
Connecticut Department of Consumer Protection
165 Capitol Ave.
Hartford, CT 06106
Phone: 860-713-6096
Fax: 860-706-1228

39