# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

OFFICE OF THE ATTORNEY GENERAL,
and THE STATE OF FLORIDA,

      Plaintiffs,

    v.                                  CASE No. 8:14-cv-1825-T-30MAP

BERGER LAW GROUP, P.A., a Florida
professional association *et al*.,

      Defendants.
_____/

## DEFAULT JUDGMENT AND FINAL JUDGMENT AS TO DEFAULTING DEFENDANTS

Plaintiffs, the State of Florida and the State of Connecticut, commenced this action on July 29, 2014 by filing a complaint (Doc. No. 1) pursuant to (1) Section 1055 of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5565; (2) Section 626 of the Omnibus Appropriations Act of 2009, as amended by Section 1097 of the CFPA, 12 U.S.C. § 5538, and the Mortgage Assistance Relief Services Rule, 12 C.F.R. Part 1015 ("Regulation O"); (3) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes; (4) Florida's Civil Theft law, Sections 812.035(5), 812.014, Florida Statutes; and (5) the Connecticut Unfair Trade Practices Act ("CUTPA"), Chapter 735a of the Connecticut General Statutes.

On August 1, 2014, the Court entered an *Ex Parte* Temporary Restraining Order with Asset Transfer Restrictions And Partial Asset Freeze, Appointment of Temporary Receiver, and Other Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not Issue. Doc. No. 10 ("TRO").  On August 22, 2014, Plaintiffs filed an Amended Complaint to add additional defendants. Doc. No. 41. Defendants Litigation Law LLC, The Resolution Law Group, P.C., The Resolution Law Center, LLC, Onisak, LLC, and Remarque Holdings, LLC (collectively the "Defaulting Defendants") failed to answer and the Clerk entered a default against them on October 29, 2014. Doc. No. 74.

The court may enter default judgment when a defendant fails to respond to a complaint and court orders and fails to participate in the litigation or cooperate in good faith with the plaintiff. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 910–12 (11th Cir. 2011); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.* 561 F.3d 1298, 1307 (11th Cir. 2009); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). Default judgment is appropriate here against Defaulting Defendants because they have failed to file answers or otherwise appear and defend the claims brought against them. Defaulting Defendants' liability is well-pled in the Amended Complaint, and Defaulting Defendants have failed to participate in the litigation in good faith. Pursuant to Fed. R. Civ. P. 55(b)(2), upon application by Plaintiffs, the Court now enters a default judgment against Defaulting Defendants for violations of Regulation O, 12 C.F.R. Part 1015; FDUTPA, Ch. Part II; Florida's Civil Theft law, sections 812.035(5), 812.014, Florida Statutes; CUTPA, Chapter 735a of the Connecticut General Statutes.

It is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

## FACTUAL AND LEGAL FINDINGS

1.     This Court has jurisdiction over the subject matter of this action because it is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a), presents a federal question, 28 U.S.C. § 1331, and is brought by Plaintiff State Attorneys General pursuant to their authority under 12 U.S.C. §§ 5538(b)(1) & 5552, and 12 C.F.R. § 1015.10 (2012).

2.     In addition, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the subject matter of the state law claims asserted by Plaintiffs because those claims are so related to the claims brought under federal consumer financial law that they form part of the same case or controversy, and because those claims arise out of the same transactions or occurrences as the claims brought by Plaintiffs pursuant to 12 U.S.C. §§ 5538(b)(1) & 5552.

3.     This Court has personal jurisdiction over the Defaulting Defendants.

4.     Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 5538(b)(5)(A) because a substantial part of the events or omissions and course of conduct giving rise to the claims set forth in the Amended Complaint occurred in this district.

5.     All parties to this action were given seven days' notice of the motion for a default judgment, as required by Fed. R. Civ. P. 55(b)(2).

6.     The Amended Complaint states a claim upon which relief can be granted.

7.     Because of the Defaulting Defendants' default, Defaulting Defendants are deemed to have admitted the well-pled facts of the Amended Complaint and the allegations are taken as true. *Eagle Hosp.*, 561 F.3d at 1307; *Buchanan*, 820 F.2d at 361.

8.     Section 1055 of the CFPA, 12 U.S.C. § 5565 – as well as Sections 501.207 and 812.035, Florida Statutes, and Sections 42-110m and 42-110o of the Connecticut General Statutes, which this Court has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367 – empower this Court to order injunctive and other relief, restitution, and civil money penalties.

9.     Plaintiffs are entitled to an Order imposing permanent injunctive relief; requiring Defaulting Defendants to make restitution of $1,914,669; and requiring Defaulting Defendants to pay civil money penalties in the amount of $3,875,000.

10.     This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

***Defaulting Defendants Operated as a Common Enterprise***

11.     Defaulting Defendants operated as a common enterprise, and are therefore jointly and severally liable for the misconduct alleged in the Amended Complaint. Plaintiffs alleged that "the Individual Defendants operated their scheme by using the Defaulting Defendants as a common enterprise." Am. Compl. ¶ 115.

12.     Each corporation existed "to participate in the same mortgage relief operation," with roles ranging from giving "consumers the impression of a legitimate law firm" to "funnel[ing] revenue to non-attorneys," to operating the "telemarketing boiler rooms that convince[d] consumers to pay RLG/BLG's fees." Am. Compl. ¶¶ 90, 117.

Defaulting Defendants commingled finances; paid each other's rents; shared a common address; shared employees; and operated under the common control of the same principals, DiGirolamo, Fox, Kramer, Berger, Friedman and Kopolow. Am. Compl. ¶¶ 118–120. Defaulting Defendants "all exist[ed] for the single purpose of selling consumers mortgage assistance relief services and splitting the profits among the individual defendants." Am. Compl. ¶ 120. None of the companies had any other business purpose. *Id.*

13.     These facts are borne out through the investigation conducted by Plaintiffs and by the Receiver's investigation of the Defaulting Defendants since his appointment by the Court.

14.     Defaulting Defendants operated as a common enterprise in effectuating the alleged mortgage relief scheme, and are therefore jointly and severally liable for all of the violations alleged in the Amended Complaint. Where one or more corporate entities operate in a common enterprise, each may be held liable for the deceptive acts and practices of the other. *Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171, 1175 (1st Cir. 1973); *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000); *FTC v. Wolf*, No. 94-8119-CIV-FERGUSON, 1996 WL 812940, *7–8 (S.D. Fla. Jan. 31, 1996); *Commodity Futures Trading Comm'n. v. Int'l Berkshire Grp. Holdings*, No. 05-61588-CIV-ALTONAGA, 2006 WL 3716390, *7 (S.D. Fla. Nov. 3, 2006).

15.     The Court, in its discretion, enters injunctive and monetary relief, without holding an evidentiary hearing. *Tara Prods,* 449 F. App'x 908 at 911–12.

16.     Entry of this Order is in the public interest.

***Defaulting Defendants Violated Regulation O***

17.     The Amended Complaint contains well-pled factual allegations supporting a finding of liability on each of these provisions of Regulation O:

a.     Defaulting Defendants offered a service, in exchange for a fee, that purported to assist consumers to prevent the foreclosure of their home or to obtain a loan modification on their home mortgage. Am. Compl. ¶¶ 4-5, 106.

b.     Defaulting Defendants charged consumers a varying upfront fee, which typically consisted of a $6,000 initial fee and $500 per month thereafter. Am. Compl. ¶ 9.

c.     The upfront fees were charged before the consumers had executed a written agreement with the loan holder or servicer that incorporated the offer obtained by the defendants. Thus, Defaulting Defendants' upfront fees violated 12 C.F.R. § 1015.5(a).

d.     In numerous instances, Defaulting Defendants discouraged consumers from communicating directly with their lenders or servicers and claimed that they would handle all communications with consumers' lenders and servicers. Am. Compl. ¶ 104. Defaulting Defendants' representations to consumers about contacting their lenders violated 12 C.F.R. § 1015.3(a).

e.      Defaulting Defendants made numerous misrepresentations to consumers about material aspects of the defendants' mortgage assistance relief services. Am. Compl. ¶¶ 10-11. Defaulting Defendants did not disclose that if consumers "stop[ped] paying [their] mortgage, [they] could lose [their] homes and damage [their] credit rating." Am. Compl. ¶ 139(c).

f.      Defaulting Defendants also misrepresented their staffing and the likelihood that their mass-joinder cases would result in the consumer receiving a loan modification with favorable terms. Am. Compl. ¶ 80. These and other material misrepresentations alleged in the Amended Complaint violated 12 C.F.R. § 1015.3(b)(4).

g.      Defaulting Defendants' solicitations to consumers failed to state that:

i.      The consumer may stop doing business with Defaulting Defendants or reject an offer of mortgage assistance, if one is made, without having to pay for the services;

ii.     Defaulting Defendants are not associated with the government or approved by the government or the consumer's lender; and

iii.    Even if the consumer uses the RLG/BLG Enterprise's service, the consumer's lender may not agree to modify the loan. Am. Compl. ¶ 101. Moreover, where any of these disclosures were made, they were not made in a "clear and prominent manner," they were

"not preceded by the heading "IMPORTANT NOTICE" or made in the font size required by law. Am. Compl. ¶¶ 101-102. Thus, Defaulting Defendants' failure to provide the required, "clear and prominent" disclosures violated 12 C.F.R. § 1015.4.

18.     Given these well-pled allegations and Defaulting Defendants' failure to answer or defend, the Court exercises its discretion to enter a default judgment against Defaulting Defendants for violations of Regulation O.

***Defaulting Defendants Violated Florida State Laws***

19.     The Amended Complaint contains well-pled factual allegations that Defaulting Defendants violated FDUTPA.

20.     Pursuant to Section 501.204(1) of FDUTPA, "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  Florida follows the "standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts."  Section 501.203(3)(b), Florida Statutes.  To that end, the Florida Supreme Court has noted a deceptive practice is one that involves a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *See PNR Inc. v. Beacon Prop. Mgmt., Inc*., 842 So. 2d 773, 777 (Fla. 2003).

21.     FDUTPA is liberally construed to protect the consuming public from those who engage in deceptive or unfair acts or practices in trade or commerce.  *See* Fla Stat. §501.202(2).

22.     Whether a representation or practice is deceptive is a matter of judicial determination.  *Dept. of Legal Affairs v. Father and Son Moving & Storage, Inc.* 643 So. 2d 22, 26 (Fla. 4th DCA 1994).

23.     To determine whether a representation is deceptive, courts must consider the impression created by the representation, not its literal truth or falsity. *See FTC v. Peoples Credit First, LLC*, 2005 WL 3468588 (M.D. Fla. 2005), aff'd 244 Fed. App'x 942 (11th Cir. 2007) (internal citation and quotation omitted).  Advertising claims are deceptive if they have the capacity to convey misleading impressions to consumers even though non-misleading interpretations may be possible.  *Father and Son Moving & Storage,* 643 So. 2d at 26.

24.     Given the Amended Complaint's well-pled allegations and Defaulting Defendants' failure to answer or defend, the Court exercises its discretion to enter a default judgment against Defaulting Defendants for willful violations of FDUTPA, as alleged in Count V by the State of Florida.

### Defaulting Defendants Violated Connecticut State Laws

25.     The Amended Complaint contains well-pled factual allegations that Defaulting Defendants violated CUTPA.

26.     Under CUTPA "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).   In construing that provision, Connecticut looks to the "interpretations given by the Federal Trade Commission and the federal courts to Section

5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." Conn. Gen. Stat. § 42-110b(b).

27.    CUTPA is remedial in character and should be so construed in favor of those whom the legislature intended to benefit.  *See* Conn. Gen. Stat. § 42-110b(d); *see also Larsen Chelsey Realty Co. v. Larsen*, 656 A.2d 1009, 1017 (Conn. 1995).

28.    Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.  *See McLaughlin Ford, Inc. v. Ford Motor Co.*, 473 A.2d 1185, 1191 (Conn. 1984).

29.    A violation of CUTPA may thus be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy.  *See Kenney v. Healey Ford-Lincoln-Mercury, Inc.* 730 A.2d 115, 117 (Conn. App. 1999).

30.    "An act or practice is deceptive if three conditions are met. First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct." *Southington Savings Bank v. Rodgers,* 668 A.2d 733 (Conn. App. 1995), cert. denied, 670 A.2d 1307 (Conn. 1996).

31.     Given the Amended Complaint's well-pled allegations and Defaulting Defendants' failure to answer or defend, the Court exercises its discretion to enter a default judgment against Defaulting Defendants for willful violations of CUTPA, as alleged in Count VI by the State of Connecticut.

## DAMAGES

32.     The proper measure of consumer redress is the total amount consumers paid to purchase goods or services, less refunds already returned. *McGregor v. Chierico*, 206 F.3d 1378, 1389 (11th Cir. 2000); *FTC v. 1st Guar. Mortg. Corp.*, No. 09-61840-CIV-O'SULLIVAN, 2011 WL 1233207, *22 (S.D. Fla. Mar. 30, 2011); *FTC v. Wolf*, No. 94-8119-CIV-FERGUSON, 1996 WL 812940, *9 (S.D. Fla. Jan. 31, 1996).

33.     Defendants are liable for the entire amount spent by consumers, regardless of whether consumers received anything of value; the relevant factor is the "fraud in the selling, not the value of the thing sold." *Chierico*, 206 F.3d at 1389 (quoting *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993)).

34.     Plaintiffs bear the burden of proving damages and may do so through affidavits and other documentary evidence showing the amount and calculation of damages. *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011).

35.     Plaintiffs have established, through competent evidence, that at least 775 consumers were victimized by and paid money to the Defaulting Defendants between April 2012 and the end of the scheme. Yerkes-Ribeiro Dec. at ¶13; Featheringill Dec. at ¶7.

36.     Plaintiffs have further established, through competent evidence, that the consumer victims of the Defaulting Defendants' scheme paid at least $5,214,184 over the lifetime of the scheme. Yerkes-Ribiero Dec. at ¶13; Featheringill Dec. at  ¶7

37.     During the same period, consumers received $95,921 in refunds, returns, or amounts for stopped payments.  Yerkes-Ribeiro Dec. at ¶9 ($91521); Featheringill Dec. at ¶9 ($4,400).

38.     The Court also notes that judgments against individual Defaulting Defendants have previously been entered for a combined total of $3,203,594.

39.     Thus, the net amount received by the Enterprise, minus the total amount of the previous judgments is $1,914,669, which represents a reasonable approximation of consumer loss for which Defaulting Defendants are jointly and severally liable.

40.     As explained in the declarations of Connecticut Investigator Caylee Yerkes-Ribiero and Florida Investigator William Featheringill attached to Plaintiffs' Motion, these figures were derived from Defaulting Defendants' records, including bank records obtained pursuant to subpoenas in the underlying investigations, and document requests to banks and other third parties pursuant to this Court's temporary restraining order and preliminary injunction as well as document requests during discovery in this case.

41.     Because the Defaulting Defendants operated as a common enterprise, the Court holds the Defaulting Defendants jointly and severally liable for the consumer loss caused by the conduct alleged in the Amended Complaint.

## DEFINITIONS

42.     For the purposes of this Default Judgment and Final Judgment, the following definitions shall apply:

a.     "Asset" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by Defaulting Defendants, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including, but not limited to any trust held for the benefit of Defaulting Defendants;

b.  "Assisting others" includes, but is not limited to:

- consulting in any form whatsoever;

- performing customer service functions including, but not limited to, receiving or responding to consumer complaints;

- formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;

- formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

- providing names of, or assisting the generation of, potential customers; or

- performing marketing, billing or payment services of any kind; and acting or serving as an employee, independent contractor, owner, officer, director, manager, or principal;

c. "Commercial Telephone Solicitation" means: an unsolicited telephone call to an individual for the purpose of inducing the individual to purchase or invest in consumer goods or services; communication with an individual where (1) a gift, award, or prize is offered or (2) a telephone call response is invited, and (3) the salesperson intends to complete a sale or enter into an agreement to purchase during the course of the telephone call; or any other communication with a individual that represents a price, quality, or availability of consumer goods or services and invites a response by telephone or which is followed by a call to the individual by a salesperson. "Commercial Telephone Solicitation" does not include unsolicited telephone calls to businesses;

d. "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definitions of the term in Section 1002(5) and (15) of the CFPA,

and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:

- extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);

- providing real estate settlement services or performing appraisals on real estate or personal property;

- collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a Consumer Financial Product or Service; or

- collecting debt related to any Consumer Financial Product or Service;

e. "Debt Relief Product or Service" means any product, service, plan or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including but not limited to a tax debt or obligation, between a person and one or more creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector;

f. "Mortgage Assistance Relief Product or Service" means any product, service, plan, or program, offered or provided to the consumer in exchange for

consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

- stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

- negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

- obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

- negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

- obtaining any waiver of an acceleration clause or balloon payment combined in any promissory note or contract secured by any dwelling; or

- negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed in lieu of foreclosure, (iii) or any other disposition of a dwelling

16

loan other than a sale to a third party that is not the dwelling loan holder.

The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application;

g. "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity;

h. "Receiver" means Mark Bernet, Esq.

i. "Telemarketing" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones, whether or not covered by the Telemarketing Sales Rule.

j. The words "and" and "or" shall be understood to have both conjunctive and disjunctive meanings as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

## FINAL ORDER AND PERMANENT INJUNCTION

### I. Permanent Ban on Consumer Financial Products or Services

IT IS THEREFORE ORDERED that the Defaulting Defendants, whether acting directly or through any other Person, are hereby PERMANENTLY ENJOINED from:

A. Advertising, marketing, promoting, offering for sale, or selling any Consumer Financial Product or Service; and

B. Knowingly assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Consumer Financial Product or Service.

## II.   Permanent Ban on Mortgage Assistance Relief Products or Services

IT IS FURTHER ORDERED that the Defaulting Defendants, whether acting directly or through any other Person, are hereby PERMANENTLY ENJOINED from:

A. Advertising, marketing, promoting, offering for sale, or selling any Mortgage Assistance Relief Product or Service; and

B. Knowingly assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Mortgage Assistance Relief Product or Service.

## III.   Permanent Ban on Debt Relief Products or Services

IT IS FURTHER ORDERED that the Defaulting Defendants, whether acting directly or through any other Person, are hereby PERMANENTLY ENJOINED from:

A. Advertising, marketing, promoting, offering for sale, or selling any Debt Relief Product or Service; and

B. Knowingly assisting others engaged in advertising marketing, promoting, offering for sale, or selling any Debt Relief Product or Service.

18

**IV.**     <u>**Prohibited Practices Relating to Any Goods or Services**</u>

IT IS FURTHER ORDERED that the Defaulting Defendants, whether acting directly or through any other Person, are hereby PERMANENTLY ENJOINED from:

A.     Misrepresenting or knowingly assisting others in misrepresenting, directly or indirectly, expressly or by implication, any material fact of any good or service including, but not limited to:

1.     the total costs to purchase, receive or use the good or service;

2.     any material restriction, limitation, or condition to purchase, receive or use the good or service;

3.     any material aspect of the nature or terms of a refund, cancellation, exchange or repurchase policy for the good or service;

4.     the income, profits or sales likely to be achieved from the good or service; and

5.     any material aspect of the performance, efficacy, nature or central characteristic of the good or service.

B.     Knowingly assisting others to make any material misrepresentation in connection with the advertising, marketing, promotion, offering for sale, or sale of any good or service including, but not limited to, the misrepresentations listed in Section IV. A.

C.     Using aliases, pen names, or otherwise using a false personal or corporate identity in connection with the advertising, marketing, promotion, offering

for sale, or sale of any good or service including, but not limited to, the misrepresentations listed in Section IV. A.

D.    Violating, or knowingly assisting others in violating, any federal or state consumer protection laws, including, but not limited to, any provision of the FDUTPA, CUTPA, and Regulation O.

## V.    **Permanent Ban on Telemarketing**

IT IS FURTHER ORDERED that the Defaulting Defendants, whether acting directly or through any Person, business entity, trust, corporation, partnership, limited liability company, subsidiary, division, or other device, or any of them, are hereby PERMANENTLY ENJOINED from engaging in, participating in, or knowingly assisting others in Telemarketing or in any other Commercial Telephone Solicitation.

## VI.    **Prohibition on Collecting on Accounts**

IT IS FURTHER ORDERED that the Defaulting Defendants, whether acting directly or through any other Person, are hereby PERMANENTLY ENJOINED from attempting to collect, collecting, selling, or assigning, or otherwise transferring any right to collect payment from any consumer who purchased or agreed to purchase Consumer Financial Products or Services, Mortgage Assistance Relief Products or Services, or Debt Relief Products or Services from Defaulting Defendants.

## VII.    **Receivership**

IT IS FURTHER ORDERED that the receivership imposed by this Court shall continue as set forth in the Court's preliminary injunction orders dated August 22, 2014 (Doc. No. 42) and September 24, 2014 (Doc. No. 51).  As a result, the Receiver shall continue to have the same duties and authorities as outlined in those orders so that he may complete the tasks outlined in those orders as well as the Court's August 1, 2014 Temporary Restraining Order (Doc. No. 10).

## VIII.    **Order to Pay Redress**

IT IS FURTHER ORDERED that a judgment for monetary relief is entered in favor of the Plaintiffs' and against the Defaulting Defendants, jointly and severally, in the amount of $1,914,669, which represents the monetary value of consumer damages proven through competent evidence ($5,118,263 subtracted by the total amount of monetary judgments that this Court has already entered against other Defendants in this action, $3,203,594)).

## IX.    **Order to Pay Civil Money Penalties**

IT IS FURTHER ORDERED that under Section 1055(c) of the CFPA, Section 501.2075 of the Florida Statutes, and Section 42-110o(b) of the Connecticut General Statutes and by reason of the violations of law described in the Amended Complaint, Defaulting Defendants must pay a civil money penalty of $3,875,000 to Plaintiffs.  This penalty shall be paid as follows: $1,937,500 to the Connecticut General Fund and $1,937,500 to the State of Florida General Revenue Fund.

21

## X.   <u>Service of Default Judgment</u>

IT IS FURTHER ORDERED that this Order may be served upon Defaulting Defendants by certified mail or United Parcel Service, either by the United States Marshal, the Clerk of Court, or any representative or agent of Plaintiffs.

**JUDGMENT IS THEREFORE ENTERED** in favor of Plaintiffs and against the Defaulting Defendants in accordance with the terms and conditions contained above. Any pending motions are denied as moot. The Clerk is directed to close this file.

DONE AND ORDERED at Tampa, Florida on this 9th day of October, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

S:\Odd\2014\14-cv-1825 Default and Final Judgment.doc